UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ULTRATECH INTERNATIONAL, INC.,

      Plaintiff,

v.                                                                    CASE NO. 3:14-cv-12-J-34JBT

RESOURCE ENERGY GROUP, LLC.,
and AARON DALE MINTON,

      Defendants.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Plaintiff's Motion for Default Judgment

Against Defendants Resource Energy Group, LLC ("REG") and Aaron Milton

("Milton") ("Motion") (Doc. 61).  Plaintiff seeks entry of a final default judgment in the

amount of $72,233.74 against REG, permanent injunctive relief against both

Defendants, and judgment in favor of Plaintiff on REG's counterclaim.  (*Id.* at 11.)

For the reasons set forth herein, the undersigned respectfully recommends that the

Motion be **GRANTED** to the extent stated herein, that final judgment be entered in

favor of Plaintiff and against Defendants providing the requested relief as limited

herein, and that Plaintiff have 30 days from the entry of the Court's Order on this

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations.  A party may respond to another party's objections within 14 days after being served with a copy."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); M.D. Fla. R. 6.02(a).  "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).

Report and Recommendation to file a motion for attorney's fees and costs.[2]

## I.    Background

Plaintiff brings this lawsuit against REG and Milton, alleging claims for breach of contract against REG ("Count I"), violation of 15 U.S.C. § 1125 against REG and Milton ("Count II"), violation of 15 U.S.C. § 1114 against REG and Milton ("Count III"), and violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201 et seq. against REG and Milton ("Count IV").   (Doc. 36.) Plaintiff seeks damages and costs against REG in Count I, and permanent injunctive relief, attorney's fees, and costs against both Defendants in the remaining counts. (*Id.*)

According to the Second Amended Complaint ("SAC"), Plaintiff manufactures a waterproofing product called "Ultra Ever Dry." (*Id.* at 3.)  Plaintiff entered into a distribution agreement with REG, which is owned and operated by Milton, wherein Plaintiff agreed to sell its product to REG, who would in turn sell the product as an independent distributor.  (*Id.*)  Plaintiff allowed REG to use its trademarks solely for the purpose of selling Plaintiff's products.   (*Id.* at 4.)   Plaintiff shipped REG

---

[2] The undersigned recommends that a hearing regarding the requested relief is not necessary because Plaintiff requests damages in a liquidated amount, and because injunctive relief may be awarded in a default judgment without a hearing when the record reflects that injunctive relief is appropriate.  *See Jenkins v. Clerk of Court, U.S. Dist. Court, S. Dist. of Fla.*, 150 F. App'x. 988, 989 (11th Cir. 2005) ("A default judgment may only be entered without a hearing if the amount claimed is a liquidated sum or one capable of mathematical calculation."); *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213 (S.D. Fla. 2004) (entering a default judgment and permanent injunction without a hearing).

$72,233.74 worth of its products, for which REG never remitted payment. (*Id.*) REG then began selling a competing product known as "Nano Tech." (*Id.* at 7.) However, Defendants continue to use Plaintiff's Ultra Ever Dry trademark in connection with Defendants' business, despite two cease and desist letters from Plaintiff. (*Id.*)

For example, Defendants operate the website www.ultraeverdrystore.com, which uses Plaintiff's Ultra Ever Dry marks to lure customers to the site, only to inform them that Plaintiff's product is "Out of Stock," but that REG's competing product is available for purchase. (*Id.* at 8.) Additionally, REG has accepted payment for Plaintiff's product which was never shipped to customers, resulting in customer complaints to Plaintiff, and has misrepresented to customers that the problem was created by Plaintiff. (*Id.* at 8–9, 12.) Therefore, Plaintiff seeks damages resulting from the breach of contract, as well as permanent injunctive relief to prevent continued unauthorized use of Plaintiff's trademarks by both Defendants.

## II.   Default Proceedings

Defendants initially appeared through counsel in this action.[3]   However, counsel was eventually granted leave to withdraw, and Defendants have failed to take any further action in this case despite the Court's warning that failure to do so

---

[3] Therefore, compliance with Section 521 of the Servicemembers Civil Relief Act as to Milton is not required because he has appeared in this action. *See Barson v. Sharr*, Case No. 6:13-cv-1767-Orl-40TBS, 2014 WL 6675655, at *2 (M.D. Fla. Nov. 24, 2014) ("[T]he provisions of the Servicemembers Civil Relief Act that would otherwise require Plaintiff to submit an affidavit stating that the defendant is not in military service do not apply because Defendant has appeared in this action.").

may result in the entry of a default judgment against them.  (Doc. 53 at 4.)  A Clerk's default has now been entered against both Defendants.  (Doc. 60.)  Therefore, although Defendants initially appeared, responded to the SAC, and REG asserted a counterclaim, Plaintiff's Motion is proper because Defendants have failed to obey the Court's previous orders (Docs. 53 & 56) or otherwise defend this action or prosecute REG's counterclaim since the withdrawal of their previous counsel.  *See Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985) ("The district court has the authority to enter default judgment for failure to prosecute with reasonable diligence or to comply with its orders or rules of procedure.").

### III.    Motion for Default Judgment

#### A.    Standard

All well-pleaded allegations of fact are deemed admitted upon entry of default, but before entering a default judgment, the court must ensure that it has jurisdiction over the claims and that the complaint adequately states a claim for which relief may be granted.  *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also GMAC Commercial Mortg. Corp. v. Maitland Hotel Assocs.*, 218 F. Supp. 2d 1355, 1359 (M.D. Fla. 2002) ("A default judgment cannot stand on a complaint that fails to state a claim.") (citations omitted).  A sufficient basis must exist in the pleadings for the judgment entered.  *See Nishimatsu Constr. Co.*, 515 F.2d at 1206.  A defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *See id.*; *see also Danning v. Lavine*,

4

572 F.2d 1386, 1388 (9th Cir. 1978) (stating that "facts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the judgment").

Rule 8 provides that a complaint must include (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for relief.   *See* Fed. R. Civ. P. 8(a).   A complaint meets the requirements of Rule 8 if, in light of the nature of the action, the complaint provides factual allegations, which are assumed to be true, sufficient to "raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007);  *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555.  Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." *Iqbal*, 556 U.S. at 664, 678.  Thus, in ruling on a motion for final default judgment, the Court must determine whether a sufficient factual basis exists in the complaint for a judgment to be entered. *See Nishimatsu Constr. Co.*, 515 F.2d at

1206.

## B.    Analysis

Upon review of the SAC, the Motion, and other relevant filings, the undersigned recommends that a default judgment be entered against Defendants. The Court has federal question jurisdiction over Counts II and III of the SAC pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Counts I and IV pursuant to 28 U.S.C. § 1367.  (*See* Doc. 36.)  Further, each count adequately states a claim for which relief may be granted, which the undersigned will address in turn.[4]

### 1.    Count I - Breach of Contract

In Florida, "[t]he elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lazard Freres & Co.*, 175 F.3d 913, 914 (11th Cir. 1999) (applying Florida law).  "A complaint need not allege an offer, acceptance, consideration, or a meeting of the minds but may instead

---

[4] Regarding Counts II–IV, at least one court in this district has observed that "[a] claim for federal . . . trademark infringement, 15 U.S.C. § 1114(1), and a false designation of origin claim (also known as unfair competition), 15 U.S.C. § 1125(a)(1), are measured by identical standards." *Kobe Japanese Steak House of Fla., Inc. v. XU, Inc.*, Case No. 8:14-cv-490-T-23MAP, 2014 WL 6608967, at *3 (M.D. Fla. Nov. 20, 2014). Another district court has observed that "[t]he legal standards for Florida statutory and common law claims of trademark infringement and unfair competition under . . . [FDUTPA] are the same as those for federal claims of trademark infringement and unfair competition." *Rain Bird Corp. v. Taylor*, 665 F. Supp. 2d 1258, 1267 (N.D. Fla. 2009).  Therefore, it may be sufficient to address Counts II–IV collectively.  Nevertheless, the undersigned will address each claim separately.

generally allege the existence of a valid contract." *Gaines v. Robinson Aviation (RVA), Inc.*, Case No. 6:14-cv-391-Orl-40GJK, 2014 WL 6882934, at *3 (M.D. Fla. Dec. 4, 2014) (applying Florida law).  However, "in order to maintain an action for breach of contract, a claimant must first establish performance on its part of the contractual obligations imposed in the contract." *Marshall Const., Ltd. v. Coastal Sheet Metal & Roofing, Inc.*, 569 So. 2d 845, 848 (Fla. Dist. Ct. App. 1990).

In the SAC, Plaintiff alleges that it "entered into a distribution agreement with REG pursuant to which [Plaintiff] agreed to sell a product called 'Ultra Ever Dry' to REG in accordance with [Plaintiff's] sales policies."  (Doc. 36 at 3.)  Plaintiff then "sold a shipment of Ultra Ever Dry to REG [on June 27, 2013] for a price . . . of $72,233.74."  (*Id.*)  "Pursuant to the parties' agreement, payment was due in thirty (30) days."  (*Id.*)  However, "REG breached its contract with [Plaintiff] by failing and refusing to pay [Plaintiff] . . . $72,233.74."  (*Id.*)  The undersigned recommends that these allegations sufficiently allege the existence of a valid contract, Plaintiff's performance  under the contract, REG's material breach, and Plaintiff's damages. Therefore, Plaintiff has stated a claim for breach of contract against REG. Accordingly, the undersigned recommends that default judgment be granted as to Count I.

### 2.    Count II - Violation of 15 U.S.C. § 1125

15 U.S.C. § 1125(a)(1) provides:

Any person who, on or in connection with any goods or

services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

"Section 43(a) of the Lanham Act [15 U.S.C. § 1125] creates a federal cause of action for unfair competition in interstate commerce, and forbids unfair trade practices involving infringement of . . . trademarks, even in the absence of federal trademark registration." *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007) (quotations omitted).   "To establish a prima facie case under § 1125(a), a plaintiff must show (1) that the plaintiff had enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two." *Id.* (quotations omitted).   In evaluating whether a likelihood of confusion exists, courts consider the following factors:

(1) strength of the mark alleged to have been infringed; (2)

8

similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public.

*Shottland v. Harrison*, Case No. 11-20140-Civ, 2012 WL 2814350, at *8 (S.D. Fla. July 10, 2012) (quotations omitted).  However, "[t]he last factor, actual confusion in the consuming public, is the most persuasive evidence in assessing likelihood of confusion." *Id.* (quoting *Tana v. Dantanna's*, 611 F.3d 767, 779 (11th Cir. 2010)).

In the SAC, Plaintiff alleges that it "has obtained multiple registrations in the U.S. Patent & Trademark Office" for numerous marks and designs, including "Ultra" and "Ultra Ever Dry."  (Doc. 36 at 5.)  Additionally, Plaintiff alleges that it has used its "Ultra" mark for more than 20 years, and that the mark has become "distinctive and widely known."  (*Id.*)  Plaintiff also alleges that its product "Ultra Ever Dry" is "sold throughout the United States and in more than fifty (50) countries around the world and is widely publicized in those countries."  (*Id.* at 6.)  Therefore, the undersigned recommends that Plaintiff has established enforceable trademark rights in its name and marks which are used in commerce.[5]

---

[5] The SAC alleges that the mark "Ultra Ever Dry" was not registered until October 8, 2013, after REG breached its contract with Plaintiff.  (*See* Doc. 36 at 4–5.)  However, this is of no consequence because a claim under Section 1125(a) does not require registration of the mark.  *See Custom Mfg. & Eng'g, Inc.*, 508 F.3d at 647.

Additionally, Plaintiff alleges that "REG continued to use (and still uses) the 'Ultra Ever Dry' trademark after they stopped selling Ultra Ever Dry which they were not (and are not) authorized to do." (*Id.* at 7.)  Plaintiff also sent two cease and desist letters to Defendants regarding use of the Ultra Ever Dry trademark.  (*Id.*)  Plaintiff further alleges that Defendants are using its marks in connection with a website called the "Ultra Ever Dry Store" and social media sites "which are intended to (and in fact do) lure customers seeking to purchase [Plaintiff's] Ultra Ever Dry Product.  REG then sells the customers its competing Nano Tech waterproofing product." (*Id.* at 8.)  Additionally, Plaintiff alleges that "Defendants falsely represent that REG sells Ultra Ever Dry on REG's website and in social media . . . even though REG does not sell Ultra Ever Dry."  (*Id.*)

Finally, Plaintiff alleges that this conduct "has had a material impact on purchasing decisions." (*Id.* at 9.) Specifically, Plaintiff states that REG has accepted payment for Ultra Ever Dry products but failed to ship them because it does not sell the products, resulting in complaints to Plaintiff because "[c]ustomers mistakenly think that [Plaintiff] is affiliated with the online 'Ultra Ever Dry Store.'" (*Id.* at 9.) Therefore, the undersigned recommends that Plaintiff has established that Defendants are making unauthorized use of Plaintiff's marks, in commerce, which is causing actual confusion to consumers.[6]   Accordingly, the undersigned

---

[6] The undersigned further recommends that, because Plaintiff alleges the existence of actual consumer confusion, the Court need not engage in a detailed analysis of the
(continued...)

recommends that default judgment be granted as to Count II.

### 3.  Count III - Violation of 15 U.S.C. § 1114

15 U.S.C. § 1114(1) provides in relevant part:

> 1) Any person who shall, without the consent of the registrant–
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,
>
> shall be liable in a civil action by the registrant for the remedies hereinafter provided.

"To prevail on a trademark infringement claim based on a federally registered mark, the registrant must show that (1) its mark was used in commerce by the defendant without the registrant's consent and (2) the unauthorized use was likely to cause confusion, or to cause mistake or to deceive."  *Rain Bird Corp.*, 665 F. Supp. 2d at 1265–66 (quotations omitted).  Notably, "a trademark infringement case

---

[6](...continued)
remaining factors regarding likelihood of confusion.

need not just involve imitation of the registrant's mark; the unauthorized use of a trademark which has the effect of misleading the public to believe that the user is sponsored or approved by the registrant can constitute infringement." *Id.* at 1266.

In the SAC, Plaintiff alleges that it has registered the marks at issue as discussed above, and that "Defendants have used and continue to use the Ultra Ever Dry tradename and trademark, without [Plaintiff's] authorization, on a website called the Ultra Ever Dry Store . . . and on social media sites and perhaps in other marketing materials to convey to purchasers an association with [Plaintiff] and to unfairly trade off the reputation and goodwill of the Ultra Ever Dry mark." (Doc. 36 at 10.)  Additionally, "Defendants' use of the Ultra Ever Dry trademark in direct competition with [Plaintiff] is intended to and does confuse purchasers and has lead, and continues to lead, some purchasers to conclude that REG is selling [Plaintiff's] Ultra Ever Dry product when that is not true." (*Id.* at 11.)  Therefore, the undersigned recommends that Plaintiff has established that Defendants are using Plaintiff's registered mark(s) in commerce without consent, and that such unauthorized use is causing actual confusion among consumers because it falsely suggests that REG is affiliated with and sells Plaintiff's products.[7]  Accordingly, the undersigned recommends that default judgment be granted as to Count III.

---

[7] Although the "Ultra Ever Dry" mark was not registered until after REG breached its contract with Plaintiff (*see* Doc. 36 at 4–5), the undersigned recommends that this is of no consequence because Plaintiff alleges that Defendants continue to use the mark after it has been registered.

### 4.      Count IV - Violation of FDUTPA, Fla. Stat. §§ 501.201 et seq.

Section 501.204, Florida Statutes, provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." "To state a claim under the FDUTPA, a plaintiff must plead the following elements: (1) a deceptive act or unfair practice; (2) causation; and (3) damages." *Kobe Japanese Steak House of Fla., Inc.*, 2014 WL 6608967, at *3 n.1.

In the SAC, Plaintiff alleges that Defendants make "misrepresentations to customers and deceiv[e] customers by operating a website called the 'Ultra Ever Dry Store' . . . and social media sites which are intended to (and in fact do) lure customers seeking to purchase [Plaintiff's] Ultra Ever Dry Product by misusing [Plaintiff's] trademark . . . and by misrepresenting that REG sells Ultra Ever Dry which is not true." (Doc. 36 at 12.)  Additionally, Plaintiff alleges that "REG then sells (or attempts to sell) the customers its competing Nano Tech waterproofing product." (*Id.*)  Plaintiff further alleges that Defendants misrepresent that they are out of Ultra Ever Dry products or that the products are backordered, and that Defendants have accepted payment for, but never shipped, orders for Ultra Ever Dry products.  (*Id.*)  Plaintiff alleges that Defendants' tactics have caused injury to Plaintiff in the form of lost sales of Ultra Ever Dry products, as well as damage to Plaintiff's good name and reputation because Defendants have made false and disparaging comments about

Plaintiff to customers.  (*Id.* at 13.)  Therefore, the undersigned recommends that Plaintiff has established that Defendants have engaged in a deceptive and unfair practice which caused damage to Plaintiff.  Accordingly, the undersigned recommends that default judgment be granted as to Count IV.[8]

### 5.    Milton's Liability

Plaintiff seeks to hold Milton, as well as REG, liable under Counts II–IV. "Natural persons, as well as corporations, may be liable for trademark infringement under the Lanham Act."  *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991).  "Obviously . . . if there was an infringement by the corporation, this infringement was caused by some one or more persons either officers or employees of the corporation who caused the acts to be done."  *Id.* (quotations omitted).  Therefore, "[i]f an individual actively and knowingly caused the infringement, he is personally liable."  *Id.*  Additionally, "[a]cting for a corporation does not relieve from liability individuals who participate in torts of unfair competition."  *Savin Corp. v. Nat'l Toner Warehouse, Inc.*, Case No. C80-897A, 1982 WL 63782, at *1 (N.D. Ga. Mar. 5, 1982).

In the SAC, Plaintiff alleges that Milton "owns and controls REG and actively

---

[8] Moreover, "[t]rademark infringement is an unfair and deceptive act that constitutes a violation under the FDUTPA."  *Sony Corp. v. Digital4less, Inc.*, Case No. 6:12-cv-1893-Orl-28GJK, 2013 WL 6842796, at *5 (M.D. Fla. Dec. 27, 2013).  Therefore, because the undersigned recommends that Plaintiff has sufficiently stated a cause of action for trademark infringement, the undersigned also recommends that Plaintiff has stated a cause of action under the FDUTPA.  *See id.*

participated in REG's willful violations of the Lanham Act and [FDUTPA]." (Doc. 36 at 3.) Therefore, the undersigned recommends that Plaintiff has established that Milton is personally liable under Counts II-IV, and that default judgment should be entered against both Defendants on these counts.

### 6.   Relief Requested

Based on the allegations in Count I of the SAC discussed above, the undersigned recommends that Plaintiff is entitled to recover the principal sum of $72,233.74 in damages from REG under Count I. Additionally, Plaintiff requests that judgment be entered in its favor on REG's counterclaim.   (Doc. 61-1 at 11.) Because REG has failed to prosecute its counterclaim, pled in the alternative, for breach of contract, unjust enrichment, or quantum meruit (Doc. 37 at 7–13), the undersigned recommends that judgment be entered in favor of Plaintiff on this claim. *See Wahl*, 773 F.2d at 1174 ("The district court has the authority to enter default judgment for failure to prosecute with reasonable diligence . . . .").

The remainder of the relief sought by Plaintiff in the Motion is permanent

injunctive relief under Counts II–IV.[9]  Regarding injunctive relief in this context:

> Pursuant to the Lanham Act, a district court is authorized to issue an injunction according to the principles of equity and upon such terms as the court may deem reasonable, to prevent violations of trademark law.  Indeed, [i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement.  Moreover, even in a default judgment setting, injunctive relief is available.  Defendants' failure to respond or otherwise appear in this action makes it difficult for Plaintiff to prevent further infringement absent an injunction.

*Under Armour, Inc. v. 51nfljersey.com*, Case No. 13-62809-CIV, 2014 WL 1652044, at *5 (S.D. Fla. Apr. 23, 2014) (quotations and citations omitted).[10]  "Permanent injunctive relief is appropriate where a plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest."  *Id.* at *6.

　　First, Plaintiff alleges that it is suffering "irreparable harm to its business,

---

[9] Although Plaintiff seeks additional relief in the SAC (*see* Doc. 36 at 15), the undersigned recommends that Plaintiff has abandoned this relief by not requesting it in the Motion or the Proposed Final Judgment (Doc. 61-1).  *See Sony Corp.*, 2013 WL 6842796, at *8 ("Given Plaintiffs [sic] failure to request such relief in the proposed judgment, the undersigned finds that Plaintiffs have abandoned the relief sought in paragraph G of the Complaint.").  Although the filing of a proposed judgment is inconsistent with the Court's Administrative Procedures for Electronic Filing in Civil and Criminal Cases, the undersigned recommends that it not be stricken in this case because it is helpful to identify the specific relief requested by Plaintiff.

[10] Plaintiff's FDUTPA claim warrants injunctive relief as well.  *See Sony Corp.*, 2013 WL 6842796, at *6 n.9 ("Plaintiffs' claims of false designation of origin, common law unfair competition, and violation of the FDUTPA each permit injunctive relief.").

reputation, goodwill and damage as a result of Defendants' acts." (Doc. 36 at 10.) Moreover, "in trademark cases, a sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of irreparable harm." *Under Armour, Inc.*, 2014 WL 1652044, at *6 (quotations omitted). Based on Plaintiff's allegations of irreparable harm and actual confusion among consumers (Doc. 36 at 9–11), the undersigned recommends that Plaintiff has established that it is suffering irreparable injury. Next, Plaintiff alleges that it "has no adequate remedy at law" based on harm it is suffering to its business, reputation, and goodwill "in an amount which presently cannot be calculated." (*Id.* at 10.) Based on the allegations in Counts II–IV of the SAC, which are discussed above, the undersigned recommends that Plaintiff has established that it has no adequate remedy at law.

Next, in balancing the hardship of the requested relief between Plaintiff and Defendant, the undersigned recommends that this weighs in favor of Plaintiff. Specifically, Plaintiff will continue to suffer the damages stated above unless Defendants are enjoined from continuing the actions giving rise to this case. On the other hand, "Defendants face no hardship if they are prohibited from the infringement of Plaintiff's trademarks, which is an illegal act." *Under Armour, Inc.*, 2014 WL 1652044, at *6. Finally, "[a]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior." *Id.* (quotations omitted). Therefore, the undersigned recommends that Plaintiff is entitled to permanent injunctive relief.

Regarding the specific relief requested, "[t]he Court's broad equity powers allow it to fashion injunctive relief necessary to stop the Defendants' infringing activities." *Id.* Where "Defendants have created an Internet-based . . . scheme in which they are profiting from their deliberate misappropriation of Plaintiff's rights[,] . . . the Court may fashion injunctive relief to eliminate the means by which Defendants are conducting their unlawful activities." *Id.* at *7. The majority of the relief requested by Plaintiff prevents Defendants from continuing their unauthorized use of Plaintiff's marks and their misrepresentations that they sell Plaintiff's products. (*See* Doc. 61-1 at 11–13.) The undersigned recommends that this relief is appropriate in light of the allegations in Counts II–IV of the SAC, which are discussed above.

Additionally, Plaintiff requests a mandatory injunction requiring Defendants to disclose contact information for customers who paid REG for Ultra Ever Dry products and never received them, and for customers to whom REG sent correspondence regarding Plaintiff or its Ultra Ever Dry products. (*Id.* at 12.) The undersigned recommends that this relief is appropriate because it will provide Plaintiff with an opportunity to rectify any confusion experienced by these customers as a result of Defendants' actions. *See Planetary Motion, Inc. v. Techsplosion, Inc.*, Case No. 99-6511-CIV, 2000 WL 34015863, at *5 (S.D. Fla. Feb. 1, 2000) (ordering the defendants in an infringement case to provide the plaintiff with contact information of all subscribers to the defendants' e-mail service so that the plaintiff could rectify

any customer confusion).

Finally, Plaintiff requests that Defendants "assign to [Plaintiff] the rights and use of its website 'ultraeverdrystore' and any other websites, social media sites or domain names owned or controlled by REG or Milton which were formed or created for the purpose of marketing or selling Ultra Ever Dry or luring customers seeking to purchase Ultra Ever Dry, in the U.S.A. or elsewhere."   (Doc. 61-1 at 12.)   The undersigned recommends that transfer of the rights and use of the specific website www.ultraeverdrystore.com from Defendants to Plaintiff is appropriate.   *See, e.g.*, *Planetary Motion, Inc.*, 2000 WL 34015863, at *5 ("Defendants shall transfer all right, title and interest in the Internet domain name Coolmail.com to Planetary Motion and take all necessary steps to effectuate that transfer.").   However, Plaintiff has cited and the undersigned has found no authority in support of Plaintiff's request for an injunction requiring transfer of the rights and use of unspecified websites, social media sites, or domain names.   Additionally, Plaintiff has alleged no facts regarding any other specific websites in the SAC.   Therefore, the undersigned recommends that this request be denied.[11]

## IV.   Conclusion

For the reasons stated above, the undersigned recommends that default judgment be granted in favor of Plaintiff and against REG in the amount of

---

[11] Moreover, it appears that the injunctive relief recommended by the undersigned is broad enough to prevent Defendants from using any such websites in a manner that would harm Plaintiff.

$72,233.74 as to Count I.  Additionally, the undersigned recommends that default judgment be granted in favor of Plaintiff and against both Defendants as to Counts II–IV, permanently enjoining Defendants as provided below.  Finally, the undersigned recommends that default judgment be entered in favor of Plaintiff and against REG on REG's counterclaim in this action, and that Plaintiff have 30 days from the entry of the Court's Order on this Report and Recommendation to file a motion for attorney's fees and costs.

Accordingly, it is respectfully **RECOMMENDED** that:

1.    The Motion (**Doc. 61**) be **GRANTED** to the extent stated herein.

2.    The Court enter an Order stating substantially the following:

a.    The Clerk of Court is Directed to enter judgment in favor of Plaintiff Ultratech International, Inc., and against Defendant Resource Energy Group, LLC, in the amount of $72,233.74, plus costs pursuant to 28 U.S.C. § 1920.  Post judgment interest will accrue at the statutory rate set forth in 28 U.S.C. § 1961.

b.    The Clerk of Court is further Directed to enter judgment in favor of Plaintiff Ultratech International, Inc., and against Defendant Resource Energy Group, LLC, and Defendant Aaron Dale Milton as follows:

> Defendants Resource Energy Group, LLC and Aaron Dale Milton, and their principals, agents, servants, employees, officers, attorneys, successors and assigns, and all persons, entities, firms, and corporations acting in privity, concert, or participation with them, are permanently enjoined:

(a) from directly or indirectly infringing or using in any way the "Ultra" mark in any manner, including use of the name "Ultra Ever Dry" in any manner or form whatsoever, including using Plaintiff's names and trademarks in internet adword purchases, website domains or subdomains, and using Plaintiff's names and trademarks in keywords, source codes or metadata associated with any website owned or controlled by Defendants;

(b) from manufacturing, distributing, selling, offering for sale, holding for sale or advertising any products, merchandise or goods bearing the name, trademark, or likeness of UltraTech's Ultra Ever Dry products;

(c) from representing that any products, merchandise or goods manufactured, distributed, sold, held for sale, or advertised by REG are sponsored, authorized by or related to UltraTech;

(d) from engaging in any conduct that tends to falsely represent, or is likely to confuse, mislead, or deceive members of the purchasing public to believe that REG and any products sold or marketed for sale by REG are in some way connected, affiliated, sponsored, approved, or licensed by UltraTech or "Ultra Ever Dry";

(e) from interfering with UltraTech's rights in, or use of, the "Ultra" mark, including the name "Ultra Ever Dry";[12] and

(f) from infringing UltraTech's "Ultra" or "Ultra Ever Dry" mark or damaging UltraTech's business, reputation or goodwill.

---

[12] The undersigned recommends that Plaintiff's additional proposed language in this subparagraph, that Defendants be enjoined from "otherwise competing unfairly with UltraTech in any manner," is too vague. Therefore, the undersigned does not recommend including this language.

Additionally, Defendants Resource Energy Group, LLC and Aaron Dale Milton, and their principals, agents, servants, employees, officers, attorneys, successors and assigns, and all persons, entities, firms, and corporations acting in privity, concert, or participation with them, are hereby ordered:

(a) to promptly remove and discontinue all literature, advertisements, descriptions, videos and depictions on any of its websites, social media pages, in its catalogues and in any other marketing materials, trade show displays, and the like which show or depict any name, trademark or such product of UltraTech including "Ultra Ever Dry";

(b) to promptly disclose to UltraTech the company names, individuals and contact information of all customers who have paid REG for Ultra Ever Dry but never received such product from REG;

(c) to promptly disclose the company names, individuals and contact information of all customers to whom REG sent emails, tweets, letters, facsimiles, or other communications since June 27, 2013 which mention or refer to "UltraTech" or "Ultra Ever Dry";

(d) to promptly take all acts necessary to permanently assign to UltraTech the rights and use of its website www.ultraeverdrystore.com.

c.     The Clerk of Court is Directed to enter judgment in favor of

Plaintiff Ultratech International, Inc., and against Defendant Resource Energy Group,

LLC, on Defendant's counterclaim.[13]

---

[13] Plaintiff also requests injunction language that it be specifically allowed to provide a copy of the judgment in this case to various entities regulating internet activity in order to place them on notice of Defendants' infringing activities. (Doc. 61-1 at 13.) However, the undersigned recommends that this language not be included for two reasons. First, any judgment entered in this action will be a matter of public record, and there would

(continued...)

       d.     The Clerk of Court is further directed to terminate any pending motions and close the file.

       e.     Plaintiff may file a motion for attorney's fees and costs within 30 days from the entry of the Court's Order on this Report and Recommendation.

       **DONE AND ENTERED** at Jacksonville, Florida, on March 30, 2015.


JOEL B. TOOMEY
United States Magistrate Judge


Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record

Resource Energy Group, LLC
c/o Aaron Milton
2920 Hagar Lane
Unit 2
Glenwood Springs, CO 80601

Aaron Milton
2920 Hagar Lane
Unit 2
Glenwood Springs, CO 80601

---

[13](...continued)
appear to be no restriction on Plaintiff providing a copy thereof to anyone it chooses. Therefore, this language appears to be unnecessary.  Second, this specific relief was not requested in the SAC.